FUENTES, Circuit Judge,
concurring.
I concur with Judge Hardiman’s well-crafted and thorough opinion. I agree with the majority’s conclusion in Part III.A that the District Court properly denied King’s motion to suppress the evidence found on the computer seized from his home. I write separately, however, because I believe that the seizure of King’s computer hard drive was more properly justified on the well-settled ground of exigent circumstances and that the majority need not have adopted a new rule of con *147 stitutional law restricting Georgia v. Randolph to searches of the home. 547 U.S. 103, 122-23, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). In Randolph, the Supreme Court held that a present cotenant could refuse consent to a police search, regardless of the consent of a fellow occupant.
The exigent circumstances exception to the warrant requirement is well-established. See, e.g., Illinois v. McArthur, 531 U.S. 326, 337, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (Souter, J., concurring) (noting that the likelihood that property can be destroyed “in anticipation of a warrant exemplifies the kind of present risk that undergirds the accepted exigent circumstances exception to the general warrant requirement”); Couden v. Duffy, 446 F.3d 483, 496 (3d Cir.2006); accord Schmerber v. California, 384 U.S. 757, 770-71, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Importantly for this case, exigent circumstances include the prevention of the “imminent destruction of evidence.” Couden, 446 F.3d at 496 (internal quotation marks & citation omitted); accord Schmerber, 384 U.S. at 770-71, 86 S.Ct. 1826. In the context of the destruction of evidence, we have described the exigent circumstances inquiry as follows:
When Government agents ... have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified.
United States v. Rubin, 474 F.2d 262, 268 (3d Cir.1973).
A review of the record in our case demonstrates that the seizure of the computer was clearly justified under the exigent circumstances exception. As the District Court found, “King would have possessed the opportunity to tamper with or dispose of the [computer] in the interim” before the officers retrieved a search warrant. (App. at 28.) This finding is reviewed for clear error. United States v. Coles, 437 F.3d 361, 366 (3d Cir.2006) (citation omitted). The officers possessed probable cause to believe that the computer contained evidence of a crime, namely images of child pornography. When Officer Kyle entered the trailer in Emporium, Pennsylvania, he recognized it as the location where the pornographic video of Larkin’s daughter was made. McCullen told Kyle that when Larkin left, she took her daughter and her computer with her, giving the officers probable cause to believe that the computer contained evidence of child pornography and that it would be found at Larkin’s residence. The officers could also reasonably conclude that the evidence on the computer would be destroyed or removed by King before they could return with a warrant. Computer-based evidence is readily tampered with, and, given Larkin’s arrest, King had a motivation to destroy any incriminating evidence on the computer. Accordingly, the District Court’s finding that King had the opportunity to tamper with the computer was not clear error, and the warrantless seizure was justified based on exigency. I would affirm the denial of the suppression motion on this ground.
Rather than affirming the District Court on the basis of exigent circumstances, the majority adopts a narrow interpretation of Randolph that limits the Supreme Court’s holding in that case to residences and does not include personal effects. I respectfully disagree with this approach. Prudential principles counsel in favor of deciding the instant case on the basis of well-established precedent rather than reaching a novel question of Fourth Amendment law. As we can uphold the seizure of the com *148 puter as necessary to prevent the destruction of evidence, I would do just that. Moreover, this approach would not substantially hinder law enforcement. The presence of an objecting co-owner is relevant to the determination of whether “the evidence will be destroyed or removed before [officers] can secure a search warrant.” Rubin, 474 F.2d at 268. The Supreme Court noted as much in Randolph:
Sometimes, of course, the very exchange of information ... in front of the objecting inhabitant may render consent irrelevant by creating an exigency that justifies immediate action on the police’s part; if the objecting tenant cannot be incapacitated from destroying easily disposable evidence during the time required to get a warrant, a fairly perceived need to act on the spot to preserve evidence may justify entry and search....
547 U.S. at 117 n. 6, 126 S.Ct. 1515 (internal citations omitted). As anticipated by the Supreme Court, King’s presence in the home, his objection to the seizure, and the ease with which he could have tampered with the evidence created a “need to act on the spot” that justified the officers’ actions.
Finally, I am concerned that the rule crafted by the majority has the potential to permit an encroachment on Fourth Amendment rights in circumstances in which society would recognize a reasonable expectation of privacy. Randolph instructs that “[t]he constant element in assessing Fourth Amendment reasonableness in the consent cases ... is the great significance given to widely shared social expectations.” 547 U.S. at 111, 126 S.Ct. 1515. I do not agree with the majority that, by sharing ownership in personal property, an individual who is present at the time that officers seek to search or seize that property has lost his or her right to refuse consent.
Take, for example, the situation in which two co-inhabitants share a footloeker inside their common residence. Both individuals have access to, and store items inside, the footloeker. For safekeeping and privacy purposes, one individual has placed inside of the footloeker photographs depicting him engaging in compromising, but legal, conduct. The police arrive at the shared residence, and the other co-inhabitant consents to the seizure of the footloeker and the search of its contents. The person depicted in the photographs objects, fearing that disclosure of the photographs could humiliate him and harm his reputation. Under the approach taken by the majority, by sharing the footloeker, he has forfeited his expectation of privacy in the photographs and his right to shield them from view.[1] An analogous scenario involving a shared computer on which one user has stored compromising digital photographs can be easily imagined.
The majority relies heavily on the principal dissenting opinion in Randolph, in which Chief Justice Roberts emphasized that “in cases of shared information, papers, containers, or places ... privacy has been shared with another. Our common social expectations may well be that the other person will not, in turn, share what we have shared with them with another— including the police — but that is the risk we take in sharing.” 547 U.S. at 131, 126 S.Ct. 1515. Positing examples that appear to be directly applicable to the instant ease, the Chief Justice concluded that by sharing a locker or a computer, one co- *149 owner has given up his privacy with respect to the other and “assume[s] the risk that those who have access to and control over his shared property might consent to a search.” Id. at 134, 126 S.Ct. 1515 (internal quotation marks omitted) (alteration in original). As the Randolph majority clarified, however, the cases on which Chief Justice Roberts relied were inapposite in one key aspect — “the potential objector[was] nearby but not invited to take part in the threshold colloquy.” Id. at 121, 126 S.Ct. 1515. Acknowledging that it was “drawing a fine line,” the Court nonetheless held that “a physically present inhabitant’s express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant.” Id. at 121, 123, 126 S.Ct. 1515 (emphasis added).
My colleagues further argue that, in writing for the Court, Justice Souter declined to expressly disagree with Chief Justice Roberts’s approach as it applied to personalty; they cite this as evidence that the Court’s intention was to restrict its holding to the home. As Randolph involved the search of a home, and not the search or seizure of personal effects, I hesitate to find such meaning in Justice Souter’s silence, particularly where, under prudential principles, we should not be addressing the issue in the first instance.
As I discuss above, we need not resolve this constitutional issue of first impression to affirm the District Court’s denial of King’s suppression motion. Instead, I would simply hold that the warrantless seizure of the computer was justified based on the exigent need to prevent the destruction of evidence.

. The situation would be very similar with respect to a self-storage unit leased by two individuals, both of whom are present when police request consent to search the unit. Keeping personal effects segregated in such a storage unit through the use of locks or other barriers would be impractical.